IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03369-PAB-KLM

MALCOLM B. NARK, d/b/a High Tech Associates,

   Plaintiff,

v.

MARTIN ENGINEERING COMPANY, an Illinois corporation,
HOT EDGE, INC., an Illinois corporation,
HOTEDGE, INC., a Colorado corporation, and
BRONSON RUMSEY, individually,

   Defendants.

**ORDER**

This matter is before the Court on the Motion for Remand [Docket No. 19] filed by plaintiff Malcolm B. Nark. In his motion, plaintiff requests that the Court remand this case to the District Court for the City and County of Denver, Colorado.

**I. BACKGROUND**[1]

Nark is the designer and inventor of snow and ice melting devices used on roof structures to enhance roof drainage. Docket No. 7 at 2, ¶ 7. Nark's inventions are known collectively as the Hot Edge Ice Melt System products.[2] *Id*. In the winter of 2008, Edwin Peterson, chairman of the board of directors for Martin Engineering Company ("Martin Engineering"), hired Nark to install a snow and ice melting system on

---

[1]The following facts are taken from plaintiff's complaint [Docket No. 7].

[2]Nark alleges that he designed the following products: HotEdge Rail, HotShingle, HotSheet, HotSeam, HotFlashing, HotDrip Edge, and HotValley. Docket No. 7 at 2, ¶ 7.

Peterson's home in Aspen, Colorado. *Id*. at ¶ 8. Because of Nark's successful installation of the ice melting products on Peterson's home, Peterson suggested that Nark allow Martin Engineering to patent Nark's Hot Edge Ice Melt System products. *Id*. at ¶ 9. On April 27, 2009, after successful contract negotiations, Nark and Martin Engineering entered into an Intellectual Property Assignment Agreement ("IPAA"). Docket No. 7 at 8-16.

Under the terms of the IPAA, Nark transferred his intellectual property rights to the Hot Edge Ice Melt System products to Martin Engineering. *Id*. at 2, ¶ 9. Nark alleges that he transferred his intellectual property rights to the ice melting products based on his understanding that Martin Engineering would acquire patents for the ice melting products and that Martin Engineering would sell or license Nark's patents to a third party manufacturer. *Id*. Nark asserts that, under the terms of the IPAA, Martin Engineering was not authorized to manufacture or distribute the Hot Edge Ice Melt System products. *Id*.

Pursuant to Nark's agreement, Martin Engineering filed U.S. Patent Application No. 12/547,227 on August 25, 2009 and U.S. Patent Application No. 12/685,578 on January 13, 2010. *Id*. at ¶ 10. These patent applications embodied Nark's HotEdge Rail, HotShingle, and HotSheet products. *Id*.

While Martin Engineering worked to secure patents for Nark's inventions, Peterson, Bronson Rumsey (Peterson's son-in-law), and Nark began discussing the possibility of using a means other than the third party manufacturer contemplated by the IPAA to distribute and manufacture the Hot Edge Ice Melt System products. *Id*. at

2-3, ¶ 11. Specifically, Nark, Peterson, and Rumsey discussed the possibility of starting a Colorado-based company to manufacture and distribute Nark's Hot Edge Ice Melt System products. *Id.* According to these preliminary discussions, Rumsey would manage the Colorado-based company and Nark would provide Rumsey with technical and marketing support. *Id*.

To market Nark's ice melting products, Martin Engineering, Rumsey, and Nark presented several Hot Edge Ice Melt System products at the International Builders Trade Show in Las Vegas, Nevada in January 2010. *Id*. at 3, ¶ 12. After receiving a positive response at the trade show, Peterson, Rumsey, and Nark created HotEdge, Inc. ("HotEdge-CO"), a Colorado company operated by Rumsey to which Nark would provide technical, sales, and marketing support. *Id*. at ¶ 13.

On April 7, 2010, after the creation of HotEdge-CO, Martin Engineering and Nark signed an Addendum to the IPAA (the "Addendum"). Docket No. 7 at 17-21. Pursuant to the terms of the Addendum, Nark would receive royalty payments in connection with the sale of any Hot Edge Ice Melt System products manufactured and sold by Martin Engineering or any of its affiliates. *Id*. at 18, ¶ 8.[3] Nark also entered into a Consulting

---

[3]The Addendum provides, in relevant part, that:

"(a) If Martin Engineering: (i) manufactures and sells a "Covered Product", (ii) contracts with another party to manufacture a "Covered Product" to be sold by Martin Engineering or (iii) contracts with another party to sell a "Covered Product" manufactured by Martin Engineering, then Martin shall be obligated to make a "Royalty Payment" to High Tech based upon the sale of "Covered Products[.]" Royalty payments shall be made in arrears with the first payment due thirty (30) days after the end of the first quarterly period when Martin Engineering receives "Net Sales" of Covered Products, and each quarterly period thereafter. For the purpose of this Agreement the term "Royalty Payment" shall be ten percent (10%) of "Net

3

Agreement with Martin Engineering, *id*. at 22-27, whereby Martin Engineering would pay Nark $6,000 per month for technical, sales, and marketing support. *Id*. Throughout 2010, Nark and Martin Engineering filed additional patent applications for Nark's HotSeam, HotFlashing, HotDrip Edge, Hot Valley, and other products. *Id*. at 3, ¶ 16.

Nark alleges that, beginning in December 2010, Martin Engineering, Hot Edge, Inc. ("HotEdge-IL"), an Illinois corporation, and HotEdge-CO began manufacturing and selling various Hot Edge Ice Melt System products. *Id*. at 4, ¶ 19. Nark asserts that Martin Engineering, HotEdge-IL, HotEdge-CO, and Rumsey sold over $1,000,000.00 worth of Hot Edge Ice Melt System products between December 1, 2010 and December 31, 2011, as well as an additional $400,000.00 worth of Hot Edge Ice Melt System products between January 1, 2012 and September 30, 2012. *Id*. at ¶¶ 19-20. Nark claims that, on September 30, 2011, Martin Engineering cancelled the Consulting Agreement and ceased payment of his consulting fee, *id*. at ¶ 22, and that he has not received a royalty payment from any of the defendants since that time. *Id*. at ¶ 23. Nark asserts that he has not been able to determine the value of the royalties owed to him under the terms of the Addendum because, despite his repeated requests, none of the defendants have provided a full and complete accounting of the Hot Edge Ice Melt System products sold in 2011 and 2012. *Id*. at ¶ 22.

On November 21, 2012, Nark commenced this action in the District Court for the City and County of Denver, Colorado. Docket No. 7. In his complaint, Nark asserts

---

Sales" of each "Covered Product."

Docket No. 7 at 18, ¶ 8.

three claims for relief.  First, Nark brings a claim for breach of contract against Martin Engineering, HotEdge-IL, and HotEdge-CO.  *Id*. at 4-5.  Second, Nark raises breach of implied contract and interference with contractual obligations claims against Rumsey.  *Id.* at 5-6.  Third, Nark requests that the Court order that defendants provide an accounting of the sales of all the Hot Edge Ice Melt System products sold since December 2010.  Docket No. 7 at 6-7.

On November 26, 2012, Nark served defendants with the summons and complaint.  Docket No. 1 at 2-3, ¶ 5.  On December 28, 2012, Martin Engineering and HotEdge-IL removed this action, asserting that this Court has subject matter jurisdiction over the case based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Docket No. 1 at 1, ¶ 1.  In the notice of removal, Martin Engineering and HotEdge-IL claim that the Court has subject matter jurisdiction because Nark fraudulently joined defendants HotEdge-CO and Rumsey in order to defeat diversity jurisdiction.  *Id*. at 8, ¶ 26.  On January 28, 2013, Nark filed the present motion for remand.  Docket No. 19.  In his motion, Nark requests that the Court remand the case to state court because defendants HotEdge-CO and Rumsey are citizens of Colorado and, therefore, their presence in this case divests the Court of diversity jurisdiction.  *Id*. at 2.  On February 19, 2013, defendants Martin Engineering and HotEdge-IL filed a response to plaintiff's motion.  Docket No. 25.  Because only two of the defendants responded to plaintiff's motion, all references to "defendants" in this Order, unless otherwise indicated, are to Martin Engineering and HotEdge-IL.

## II. STANDARD OF REVIEW

A party may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Generally, in a removal case, such as this one, the removing party has the burden of establishing that the jurisdictional prerequisites have been satisfied by a "preponderance of the evidence." *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (*Martin I*). Moreover, when a case is originally filed in state court, there is a strong presumption against removal and all ambiguities must be resolved against removal. *Id.* at 1289.

In this case, removal is premised on diversity jurisdiction under 28 U.S.C. § 1332(a). Diversity jurisdiction exists when the case involves a dispute between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). To meet the diversity requirement, there must be complete diversity between plaintiff and all defendants, meaning that no defendant can be from the same state as any plaintiff. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Moreover, the Court is required to remand a case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see Miller v. Lambeth*, 443 F.3d 757, 759 (10th Cir. 2006) ("[t]he two categories of remand within § 1447(c) . . . are remands for lack of subject matter jurisdiction and for defects in removal procedure").

**III.  ANALYSIS**

In this case, no party disputes that the amount in controversy requirement is satisfied.  In addition, the parties do not dispute that Nark is a citizen of Colorado, that Rumsey is a citizen of Colorado, and that HotEdge-CO is a corporation incorporated in Colorado with its principal place of business in Colorado.  *See* Docket Nos. 19-2, 19-3; Docket No. 25-1 at 1, ¶ 4.  As noted above, when any plaintiff and defendant have the same citizenship, as Nark, Rumsey, and HotEdge-CO do here, diversity jurisdiction fails.  *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) (noting that, when jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332(a), as is the case here, each plaintiff must be diverse from each defendant to have what is known as "complete diversity").  To avoid this outcome, defendants allege that Nark "fraudulently joined" Rumsey and HotEdge-CO for the sole purpose of defeating diversity jurisdiction.  Docket No. 25 at 1-5.

   **A.   Fraudulent Joinder**

A "fraudulent joinder analysis [is] a jurisdictional inquiry."  *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004).  To prove that a non-diverse defendant was joined to defeat federal jurisdiction, defendants must show either (1) that there is "no possibility" that plaintiff will be able to establish a cause of action against the non-diverse defendant or (2) outright fraud in the pleading of jurisdictional facts.  *Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F. Supp. 2d 1108, 1113 (D. Colo. 2000); *Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1404 (D. Colo. 1989).  The burden of proving fraudulent joinder is extremely high and, "[i]f there is even a

possibility that the state court would find that the complaint states a cause of action against the resident defendant, the federal court must find that the joinder was proper and remand the case to state court." *Hale*, 93 F. Supp. 2d at 1113 (citation omitted). Additionally, the removing party claiming fraudulent joinder must "prove the non-liability of the defendant as a matter of fact or law." *Blackwood v. Thomas*, 855 F. Supp. 1205, 1207 (D. Colo. 1994).

In cases where fraudulent joinder is claimed, courts must "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted); *Smoot v. Chicago*, *Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967). In so doing, courts must decide whether there is a reasonable basis to believe the plaintiff might succeed on at least one claim against a non-diverse defendant. *Nerad v. Astrazeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). For a claim to have a reasonable basis, it must have a basis in the alleged facts and the applicable law. *Id*.

Defendants argue that Nark fraudulently joined Rumsey in order to divest the Court of diversity jurisdiction.[4] Docket No. 25 at 5. In support, defendants claim that the complaint does not sufficiently allege that Rumsey induced Martin Engineering and HotEdge-IL to breach the terms of the Addendum. *Id*. Defendants state that the Addendum required Martin Engineering to make royalty payments only for "the invoice price actually received by Martin Engineering from the sale of 'Covered Product.'" *Id*. at

---

[4]Pursuant to the terms of the IPAA and the Addendum, construction of the parties' agreements is governed by the substantive laws of the State of Illinois. Docket No. 7 at 13, ¶ 19; *id*. at 25, ¶ 7.7; *see also* Docket No. 25 at 1 n.1.

5 (citing Docket No. 7 at 18, ¶ 8(d)).  Defendants further contend that Rumsey's alleged failure to "report or account for. . . sales [of the Hot Edge Ice Melt System products] to Defendants Martin [Engineering] and HotEdge[-IL,]" Docket No. 7 at 6, ¶ 37, did not prevent Martin Engineering or HotEdge-IL from paying royalties on all of their sales. Docket No. 25 at 5.  As such, defendants contend that Rumsey's actions did not cause a breach of the Addendum, but only reduced the amount of the royalties Martin Engineering and HotEdge-IL paid Nark.  *Id*.

In response, Nark claims that his allegations are sufficient to establish a claim for interference with contractual relations.  Docket No. 19 at 13.  Nark also argues that he does not have to prove his case in the complaint and that defendants' arguments do not show that "as a matter of law" Nark has no possibility of success on his claims.  *Id*. at 14; Docket No. 29 at 3-4.

Before addressing defendants' argument, the Court notes that, in the notice of removal, defendants claim that Rumsey was fraudulently joined to this action because Nark's second claim for relief against Rumsey does not arise out of the same transaction or occurrence as Nark's first claim for breach of contract.  Docket No. 1 at 6, ¶¶ 15-16.  Defendants, however, do not mention this argument in their response to the motion for remand.  To the extent defendants still assert this argument, the Court finds that Nark's second claim for relief against Rumsey satisfies the joinder requirements set forth in Rule 20 of the Colorado Rules of Civil Procedure.  Both the contract and the intentional interference with contract claims arise out of Martin Engineering's failure to make royalty payments.  Moreover, there are common questions of fact and law surrounding both claims, namely, whether the Addendum compels Martin Engineering

9

to pay Nark royalty payments for the sales of products even if Martin Engineering does not receive invoices for the sales and whether Rumsey's failure to report his sales caused Martin Engineering to breach the terms of the Addendum. All of these issues share the same background facts, will likely involve testimony from the same witnesses, and therefore arise out of the same transactions and occurrences. Colo. R. Civ. P. 20(a); *City of Aurora ex rel. Utility Enter. v. Colo. State Eng'r*, 105 P.3d 595, 623 (Colo. 2005) (noting that, under Colorado law, Rule 20 is given "the broadest possible reading").

With regard to Nark's second claim for relief, under Colorado law, the elements of the tort of intentional interference with existing contracts are: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of this contractual relation; (3) intent by the defendant to induce a breach of contract with the third party; (4) action by defendant which induces a breach of contract; and (5) damages. *Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.*, 831 P.2d 908, 912 (Colo. App. 1991).[5] In addition, the defendant must have acted "improperly" in causing the result. *Krystkowiak v. W. O. Brisben Cos., Inc.*, 90 P.3d 859, 871 (Colo. 2004).[6]

---

[5]Nark does not present arguments in support of his claim against Rumsey for a breach of an implied contract. *See* Docket No. 7 at 5; Docket No. 25 at 5.

[6]In determining whether a defendant has acted improperly, courts consider the following: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relation between the parties. *Krystkowiak v. W. O. Brisben Cos., Inc.*, 90 P.3d 859, 871 n. 13 (Colo. 2004).

In this case, defendants argue that Nark's allegations do not satisfy the third and fourth elements of an intentional interference with contract claim.[7] In order to satisfy the third and fourth elements of this claim, Nark must sufficiently allege that Rumsey acted improperly and caused Martin Engineering to breach the terms of the Addendum. *Krystkowiak*, 90 P.3d at 871. In his complaint, Nark claims that Rumsey "knew" that Nark was entitled to royalty payments for sales of the Hot Edge Ice Melt System products, Docket No. 7 at 5-6, ¶ 35, yet Rumsey "failed" to report a significant amount of his sales to Martin Engineering and HotEdge-IL. *Id*. at 6, ¶ 37. The Court finds that these allegations are sufficient, for the purposes of a motion to remand, to establish the third element of an intentional interference with contract claim, namely, that Rumsey acted improperly when withholding the sales reports. *Krystkowiak*, 90 P.3d at 871.

In addition, Nark asserts that Martin Engineering "owned" HotEdge-CO, that this company was operated by Rumsey, Docket No. 7 at 5, ¶ 32, and that Rumsey's failure to report his sales "interfered" with Martin Engineering's obligation under the Addendum to pay Nark "royalty payments of ten percent (10%) of the net sales of such products." *Id*. at 6, ¶ 38. The Court finds that these allegations are sufficient, for the purposes of a motion to remand, to establish the fourth element of an intentional interference of contract claim. Because the Addendum requires Martin Engineering to pay royalties for sales of Nark's products, *id*. at 18, ¶ 8(a) ("Martin shall be obligated to make a 'Royalty

---

[7]The Court notes that Nark has sufficiently alleged the first, second, and fifth elements of an intentional interference with a contract claim. Specifically, Nark avers that Martin Engineering and Nark had a valid and enforceable contract (i.e., the IPAA and the Addendum); Rumsey had knowledge of the IPAA and the Addendum; and Nark suffered damages in the loss of royalty payments due to Rumsey's failure to report sales. *See Galleria*, 831 P.2d at 912.

Payment' to High Tech based upon the sale of 'Covered Products'"), it is plausible that Rumsey's failure to report his sales of Nark's products caused Martin Engineering to breach its obligation to pay royalties for the sale of "Covered Products." *Id*.

Although defendants argue that their obligation under the contract was to pay Nark royalty payments only after Martin Engineering "actually" received "the invoice price," the Court finds that the parties' Addendum is susceptible to multiple interpretations. Defendants interpret the Addendum to mean that Martin Engineering's obligation to pay Nark royalty payments for the sales of covered products is only triggered after Martin Engineering actually receives invoices. Docket No. 25 at 5. Thus, defendants claim, because Martin Engineering did not receive an invoice of Rumsey's sales, Martin Engineering did not breach the terms of the Addendum, and Rumsey's actions only reduced the amount of the royalties paid to Nark. *Id*. This argument, however, is unconvincing. The Addendum requires that Martin Engineering "make" royalty payment based upon the "sale of 'Covered Products.'" Docket No. 7 at 18, ¶ 8(a). Based on this language, it is plausible that a state court could interpret the Addendum to mean that Martin Engineering has a duty to pay royalties for *all* the sales of Nark's products, not just for some of those sales or only for the sales of which Martin Engineering is aware. Assuming this is the interpretation given to the contractual terms, a reduction in the amount of royalties Martin Engineering paid Nark because of Rumsey's failure to report sales would constitute a breach of the terms of the Addendum. The determination of whether the Addendum requires Martin Engineering to pay for all sales of Nark's products or only for the sales of which Martin Engineering has knowledge necessarily requires a construction of the terms of the Addendum.

However, because the Court must not pre-try the issue of liability during a fraudulent joinder analysis, and the Addendum is susceptible to multiple interpretations, the Court finds that there is a reasonable basis here to believe that a state court could find that Nark's complaint sufficiently states a claim for intentional interference with contractual relations.[8]  *See Hale*, 93 F. Supp. 2d at 1113; *Smoot*, 378 F.2d at 882 (noting that courts should not "pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty"); *Slater Numismatics, LLC v. Driving Force, LLC*, --- P.3d ----, 2012 WL 2353847, at *9-10 (Colo. App. June 21, 2012) (noting that a defendant may be liable for an intentional interference with contract claim for causing "a third party to fail in some significant aspect of performance which the third party owes to the plaintiff"). Accordingly, viewing these facts in the light most favorable to Nark – the non-removing party – the Court finds that defendants have failed to show that there is "no possibility" that a state court will find that Nark asserts a claim against Rumsey.  *See Hale*, 93 F. Supp. 2d at 1113.

---

[8] The outcome of this motion would be the same under Illinois law given that the elements of the tort of intentional interference with contractual relations are similar in both states.  *See, e.g., HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (noting that the elements of an intentional interference with contractual relations tort under Illinois law are: "'(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages'") (citation omitted).  In addition, for a plaintiff to establish the tort of intentional interference with contract, a plaintiff must provide evidence of a breach of contract caused by the defendant.  *Strosberg v. Brauvin Realty Servs., Inc.*, 691 N.E. 2d 834, 845 (Ill. App. Ct. 1998).

In addition to the argument above, defendants claim that Rumsey's alleged diversion of sales constitutes tortious conduct towards the other defendants, and not Nark. Docket No. 25 at 5. In support of this argument, defendants cite three cases: *Hales v. Ashland Oil, Inc.*, 342 So. 2d 984 (Fla. Dist. Ct. App. 1977), *Williamson Picket, Gross, Inc. v. 400 Park Ave. Co.,* 405 N.Y.S. 2d 709 (N.Y. App. Div. 1978), and *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980). However, none of these cases support defendants' argument or interpret Colorado law. First, the plaintiffs in *Hales* were customers who had contracted with Pickard to buy 200 trawlers. 342 So. 2d at 986. Pickard, in turn, had contracted with Ashland Oil, Inc. and Ashland's wholly owned subsidiaries (collectively, the "Ashland group") to produce and sell the trawlers. *Id*. at 985. After Pickard's business relationship with the Ashland group deteriorated, Pickard sued the Ashland group for deceit and breach of contract. *Id*. Pickard secured a jury award on its claim that the Ashland group never intended to fulfill their contractual obligations and sought only to "take advantage of Pickard's expertise in outfitting the hulls." *Id*. at 985. Because Pickard could not deliver plaintiffs' trawlers due to the Ashland group's breach, plaintiffs sued the Ashland group for intentional interference with plaintiffs' contractual relationship with Pickard. *Id*. at 986. The court rejected plaintiffs' claim, finding that the agreement between Pickard and the Ashland group was not designed to benefit plaintiffs, but was "solely for the mutual profit of Pickard and the Ashland [ ] group." *Id*. at 986. Thus, the court in *Hales* held that the plaintiffs in that case did not suffer a direct injury because, even though the Ashland group's fraudulent breach of its contract with Pickard resulted in the unavailability of plaintiffs' trawlers, the

plaintiffs were not intended third party beneficiaries of the contract between Pickard and the Ashland group. *Id*. Nark's claims in this case, however, are of a different nature. Nark is a signatory to the Addendum and, because the Addendum specifically provides for Nark's receipt of royalties, Nark is a direct beneficiary of it. Moreover, Rumsey's intentional failure to provide the sales reports caused Nark a direct injury in the loss or diminution of royalty payments. Docket No. 7 at 6, ¶ 37.

Second, *Williamson* is a New York case that deals with a claim of "[i]nterference with precontractual relations." 405 N.Y.S. 2d at 710. The court in that case found that the defendant was entitled to "interfere[ ] with relations which are merely prospective" because the defendant had a privilege to disturb potential contractual negotiations to protect its own property. *Id*. at 711 (citation omitted). As noted in *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1196-97 (Colo. App. 2009), the elements of the tort of interference with prospective business relations are similar to the elements of the tort of intentional interference with an existing contract. *Id*. However, when the conduct in question involves intentional interference with prospective contractual relations, the factors usually considered when determining whether the interference was improper do not apply, as an individual's privilege to engage in business and compete with others implies a privilege to induce third persons to do business with that individual rather than with a competitor. *Id*. Thus, "greater protection is given to the interest in an existing contract than to the interest in acquiring prospective contractual relations" and, as a result, business competition is a permissible interference with prospective contractual

relations. *Id*. at 1197. Given that the privilege of lawful competition is not at issue in this case, the Court finds defendants' reliance on *Williamson* inapposite.[9]

Third, *Ethyl* is a Florida case related to an appellee's claim that a creditor's refusal to accept a plan of reorganization constituted interference with contractual relations. 386 So. 2d at 1223-24. The court in *Ethyl* overturned the jury verdict in favor of the appellee because there was a "lack of proof of [the creditor's] direct interference" with the contract, *id*. at 1223, and the creditor was privileged, as a matter of law, to act in the manner that it did. *Id*. In this case, Nark has sufficiently alleged Rumsey's direct interference based on Rumsey's intentional failure to report sales and defendants do not argue that Rumsey's failure to report the sales was privileged. Therefore, defendants' reliance on *Ethyl* is also misplaced.

In light of the foregoing discussion, the Court concludes that, under Colorado law, Nark asserts a potentially viable claim against Rumsey for intentional interference with contractual relations.[10] Thus, because Rumsey is not fraudulently joined, Rumsey's Colorado citizenship destroys complete diversity and divests the Court of subject matter jurisdiction over this case. *Lincoln*, 546 U.S. at 89; 28 U.S.C. § 1332.

---

[9]The Court notes that Illinois law applies the same distinction. *See, e.g., Belden Corp. v. InterNorth, Inc.*, 413 N.E. 2d 98, 101-02 (Ill. App. Ct. 1980) (noting that the "elements of the tort of interference with prospective advantage are similar [to the elements of an intentional interference with contractual relations claim], but not identical." Unlike the "right to receive the benefits of a contract, the right to engage in a business relationship is not absolute, and must be exercised with regard to the rights of others" to engage in "lawful competition, which constitutes a privileged interference with another's business").

[10]Because the Court finds that Nark asserts a viable claim against Rumsey – a non-diverse defendant – the Court need not address defendants' arguments with regard to Nark's claim against HotEdge-CO.

16

Accordingly, because the Court lacks subject matter jurisdiction, the Court will remand the case to state court pursuant to 28 U.S.C. § 1447(c). *See Lambeth*, 443 F.3d at 759; *Martin I*, 251 F.3d at 1290 (noting that, when a defendant removes a case from state court, the removing defendant has the burden of establishing that the jurisdictional prerequisites of § 1332 have been satisfied).

### B. Attorneys' Fees Award

Nark requests an award of attorneys' fees incurred as a result of defendants' removal. Docket No. 19 at 14-15. Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Generally, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (*Martin II*).

In this case, the Court concludes that defendants had objectively reasonable arguments in support of their claims that HotEdge-CO and Rumsey were fraudulently joined because there are reasonable doubts about HotEdge-CO's status as an assignee, as well as Martin Engineering's obligations under the Addendum. Although defendants were unable to demonstrate fraudulent joinder, defendants presented plausible arguments regarding deficiencies in Nark's complaint and Nark has not identified "unusual circumstances" that warrant an award of attorneys' fees. *See Martin II*, 546 U.S. at 140 (noting that the appropriate test for awarding fees should not undermine Congress' basic decision to afford defendants a right to remove). Given that

17

defendants presented objectively reasonable arguments, the Court will deny Nark's request for attorneys' fees. *Id*. at 141

## IV. CONCLUSION

Accordingly, it is

**ORDERED** that Plaintiff's Motion to Remand and Supporting Brief [Docket No. 19] is **GRANTED**. It is further

**ORDERED** that Defendants' Motions to Dismiss [Docket Nos. 10, 11, 12] are **DENIED** as **moot**. It is further

**ORDERED** that, pursuant to 28 U.S.C. § 1447(c) and due to this Court's lack of subject matter jurisdiction, this case is **REMANDED** to the District Court for the City and County of Denver, Colorado, where it was originally filed as Case No. 2012CV7086. It is further

**ORDERED** that this case is closed in its entirety. It is further

**ORDERED** that, within 14 days of this Order, plaintiff Malcolm B. Nark may file his bill of costs with the Clerk of the Court.

DATED July 24, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge